# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMAR WILSON, | ) |
| Plaintiff, | ) Civil Action No. 14 – 1654 |
| v. | ) District Judge Arthur J. Schwab |
| | ) Magistrate Judge Lisa Pupo Lenihan |
| SUPERINTENDENT ROBERT GILMORE, JOHN DOE #1-#6, and JANE DOE, | ) |
| Defendants. | ) |

## REPORT AND RECOMMENDATION

**I. RECOMMENDATION**

For the following reasons, it is respectfully recommended that Defendant Gilmore's Motion to Dismiss (ECF No. 11) be denied.

**II. REPORT**

Plaintiff Jamar Wilson is an inmate in the custody of the Pennsylvania Department of Corrections and is currently confined at SCI-Greene. He filed this lawsuit against SCI-Greene Superintendent Robert Gilmore and numerous John/Jane Does. In sum, his Complaint alleges that correctional officers broke his arm while applying handcuffs following an incident with another inmate that occurred on September 20, 2014. Plaintiff asserts Eighth Amendment claims for excessive force, failure to intervene, deliberate indifference, failure to train and supervise, and failure to screen and train. He also asserts state law assault and battery and intentional

1

infliction of emotional distress claims. Only the failure to train and supervise claim is asserted against Superintendent Gilmore who has filed a Motion to Dismiss the Complaint for failure to state a claim.

### A. Plaintiff's Allegations

Plaintiff's first set of allegations is entitled "Unnecessary Use of Force and Restraints". (ECF No. 3 at ¶¶ 10-19.) Plaintiff alleges that on September 20, 2014, he and another prisoner had a verbal confrontation that escalated into a physical fight. Id. at ¶ 10. The fight was broken up by several correctional officers, who then handcuffed him. Id. at ¶¶ 11-12. Plaintiff alleges that the handcuffs were too tight, causing him pain and pressure on the bones of his right and left wrist and an obstruction to his circulation that prevented him from moving his hands. Id. at ¶ 13. Plaintiff complained to defendants John Doe #1 and John Doe #2, but John Doe #2 told him to "shut up" and then used "armbar pressure" that caused Plaintiff's right forearm to snap. Id. at ¶¶ 14-15. He was then brought to medical. Id. at ¶¶ 16, 19. Plaintiff does not make any allegations in this section concerning Superintendent Gilmore.

Plaintiff's second set of allegations is entitled "Denial of Serious Medical Need – Unnecessary and Wanton Infliction of Pain." Id. at ¶¶ 20-27. Plaintiff alleges that he explained to defendant Nurse Jane Doe that his arm had snapped because of the handcuffs and the mistreatment from John Does #1 and #2. Id. at ¶¶ 20, 22. After hearing this, Nurse Doe took him into the medical examination room. Id. at ¶ 23. Plaintiff told her that he was in pain but John Does #1 and #2 both told him to keep his mouth shut and John Doe #2 tightened his cuffs every more. Id. Shortly thereafter, Plaintiff was taken to the Restricted Housing Unit ("RHU"). Id. at ¶ 25. By this point, the bone was allegedly protruding from his arm. Id. at ¶ 26. There are no allegations in this section concerning Superintendent Gilmore.

Plaintiff's third set of allegations is entitled "Unnecessary and Wanton Infliction of Pain." Id. at ¶¶ 28-60. Plaintiff states that he was left in the RHU despite his broken arm and his requests to see medical. Id. at ¶¶ 28-30. He was told to put in a sick call request. Id. at ¶¶ 32-36. Around 6:30 p.m. that evening, Plaintiff was taken to an isolated cell where he was questioned about the fight by Captain Mitchell. Id. at ¶¶ 38-39. Plaintiff informed Captain Mitchell that he needed medical, and, at that point, a nurse came with an ice pack and told him to put in a sick call. Id. at ¶¶ 40-43. The pattern of requests for medical and instructions to put in a sick call continued during the following days, during which time Plaintiff alleges he was in terrible pain. Id. at ¶¶ 45-49. He saw Dr. Park two days later, on September 22, 2014, but Dr. Park told him he was fine. Id. at ¶¶ 51-58. Finally, he alleges that a John Doe doctor saw him on September 24, 2014 and ordered an x-ray. Id. at ¶ 60. There are no allegations in this section concerning Superintendent Gilmore.

Plaintiff's fourth set of allegations is entitled "Removal from FA 8 Cell". Id. at ¶¶ 61-84. Plaintiff alleges that on September 24, 2014, he was taken for x-rays, which allegedly showed that he had a broken arm. Id. at ¶¶ 61-62. He was then placed under the care of Dr. Jin, who manually and painfully snapped his bone back into place but refused to let him see an outside doctor. Id. at ¶¶ 65-72. Dr. Jin allegedly then placed Plaintiff back into the RHU with no pain medication. Id. at ¶¶ 78-80. Finally, on September 29, 2014, Plaintiff received pain medication. Id. at ¶ 82. He filed Grievance 531045 on the matter on October 8, 2014. Id. at ¶ 84. There are no allegations in this section concerning Superintendent Gilmore.

Plaintiff's fifth set of allegations is entitled "Application of Restraints". Id. at ¶¶ 93-97. Plaintiff alleges that at the time the fight was broken up on September 20, 2014, defendants John Doe #1 and #2 applied restraints to him and used force against him to punish him and cause him

pain in contradiction to prison policy. Id. There are no allegations in this section concerning Superintendent Gilmore.

Plaintiff's sixth set of allegations is entitled "Medical Need". Id. at ¶¶ 93-97. In this section, Plaintiff reiterates his earlier allegations that he was not provided needed medical care. Id. Again, there are no allegations in this section concerning Superintendent Gilmore.

Plaintiff's seventh set of allegations is entitled "Conduct of Supervisors". Id. at ¶¶ 98-116. Plaintiff alleges that John Doe #3, who was the shift commander on the afternoon of September 20, 2014, had the duty to ensure that the officers under his supervision, including John Does #1 and #2, complied with the DOC's policies on restraints, use of force and access to medical care. Id. at ¶¶ 98-99. He claims that John Doe #3's failure to do this was a reason why John Does #1 and #2 applied unnecessary use of force that caused his arm to break and also a reason why John Doe #1 did not intervene when John Doe #2 broke his arm. Id. at ¶¶ 100-102. He also claims that John Doe #3 tolerated and acquiesced in previous incidents when officers under his supervision used excessive force and did not provide inmates with medical care who needed it. Id. at ¶¶ 103-104. With respect to Superintendent Gilmore, Plaintiff alleges that he failed to provide adequate training and supervision to ensure that prison policies are followed, specifically regarding the use of force policy, the policy regarding access to medical care and the policy regarding application of restraints. Id. at ¶ 107. He also alleges that Superintendent Gilmore knew of occasions where these policies were violated, but tolerated, encouraged, and acquiesced in such violations and ignored prisoner complaints about them. Id. at ¶¶ 111-112. He then alleges that John Does #4-6 failed to adequately screen and/or train John Does #1-3 and Jane Doe. Id. at ¶ 115.

4

Plaintiff states that he suffered severe pain and emotional distress because of the above allegations. Id. at ¶¶ 117-21. He also states that no investigation into his allegations ever took place despite his grievance. Id. at ¶¶ 122-25.

**B. Standard of Review**

Recently, the United States Court of Appeals for the Third Circuit summarized the standard to be applied in deciding motions to dismiss filed pursuant to Rule 12(b)(6):

> Under the "notice pleading" standard embodied in Rule 8 of the Federal Rules of Civil Procedure, a plaintiff must come forward with "a short and plain statement of the claim showing that the pleader is entitled to relief." As explicated in Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), a claimant must state a "plausible" claim for relief, and "[a] claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Although "[f]actual allegations must be enough to raise a right to relief above the speculative level," Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007), a plaintiff "need only put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element." Fowler, 578 F.3d at 213 (quotation marks and citations omitted); see also Covington v. Int'l Ass'n of Approved Basketball Officials, 710 F.3d 114, 117–18 (3d Cir.2013).

Thompson v. Real Estate Mortg. Network, 748 F.3d 142, 147 (3d Cir. 2014).

**C. Discussion**

Superintendent Gilmore moves to dismiss Plaintiff's Complaint for failure to show that he had sufficient personal involvement in the alleged wrongdoing. Plaintiff, however, seeks to hold Superintendent Gilmore liable based on his actions as a supervisor.

1. Personal Involvement/Supervisor Liability

to establish personal liability against a defendant in a section 1983 action, that defendant "must have personal involvement in the alleged wrongs; liability cannot be predicated solely on

the operation of *respondeat superior*." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (citing Parratt v. Taylor, 451 U.S. 527, 537 n.3 (1981)). "In a § 1983 suit or a *Bivens* action – where masters do not answer for the torts of their servants – the term 'supervisory liability' is a misnomer." Iqbal, 129 S. Ct. at 1949. Instead, each Government official, regardless of his or her title, is only liable for his or her own misconduct. Id. "[I]t is not enough for a plaintiff to argue that the constitutionally cognizable injury would not have occurred if the superior had done more than he or she did." Sample v. Diecks, 885 F.2d 1099, 1118 (3d Cir. 1989).

The Third Circuit Court of Appeals has identified two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates. First, liability may attach if they, "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr., 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original) (quoting Stoneking v. Bradford Area Sch. Dist., 882 F.2d 720, 725 (3d Cir. 1989)). Second, "a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced" in the subordinate's unconstitutional conduct. Id. (citing Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1995)). "Failure to" claims – failure to train, failure to discipline, or failure to supervise – are generally considered a subcategory of policy or practice liability. See *Rosalie Berger Levinson, Who Will Supervise the Supervisors? Establishing Liability for Failure to Train, Supervise, or Discipline Subordinates in a Post Iqbal/Connick World*, 47 Harv. C.R. – C.L. L.Rev. 273, 280 (2012).

In Sample v. Diecks, the Third Circuit recognized that "'supervision' entails, among other things, training, defining expected performance by promulgating rules or otherwise, monitoring adherence to performance standards, and responding to unacceptable performance whether through individualized discipline or further rulemaking." 885 F.2d at 1116. Sample involved an Eighth Amendment claim against a supervisor for implementing deficient policies and being deliberately indifferent to the risk that the policies would result in the deprivation of a constitutional right. Id.; see also Beers-Capitol v. Whetzel, 256 F.3d 120, 133-34 (3d Cir. 2001) (discussing Sample). The Court developed a four-part test for determining whether an official may be held liable on a claim for failure to supervise. The plaintiff must identify a supervisory policy or practice that the supervisor failed to employ, and then prove that: (1) the policy or procedures in effect at the time of the alleged injury created an unreasonable risk of a constitutional violation; (2) the defendant-official was aware that the policy created an unreasonable risk; (3) the defendant was indifferent to that risk; and (4) the constitutional injury was caused by the failure to implement the supervisory practice or procedure. Sample, 885 F.2d at 1118; Brown v. Muhlenberg Twp., 269 F.3d 205 (3d Cir. 2001). In this Circuit, when a plaintiff seeks to hold a defendant liable under the Eighth Amendment in his or her role as a supervisor, "Sample's four-part test provides the analytical structure . . . ., it being simply the deliberate indifference test applied to the specific situation of a policymaker." Whetzel, 256 F.3d at 135.

2. Sufficiency of the Complaint

That Plaintiff has alleged supervisory liability claims does not mean that he has supported those allegations with "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" Sheridan v. NGK Metals Corp., 609 F.3d 239, 262 n.17 (3d Cir. 2010)

(quoting Iqbal, 129 S. Ct. at 1949), as is required by the seminal Supreme Court decisions in Iqbal and Twombly.[1] While detailed factual allegations are not required, the pleading must include more than "an unadorned, the-defendant-unlawfully-harmed-me accusation," "'labels and conclusions,'" "'a formulaic recitation of the elements of a cause of action,'" or "'naked assertion[s].'" Iqbal, 129 S. Ct. at 1949 (alteration in original) (quoting Twombly, 550 U.S. at 555, 557). Accordingly, the basic principle that a court must accept all allegations as true is inapplicable to either legal conclusions or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Id. (citing Twombly, 550 U.S. at 555).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). This "plausibility" standard does not require probability, but it does demand more than a sheer possibility that the defendant acted unlawfully. Id. Therefore, a complaint pleading facts that are merely consistent with liability is insufficient. Id.

3. Allegations as to Superintendent Gilmore

Plaintiff's principal contention is that the Constitution imposed on Superintendent Gilmore a duty to train and supervise his subordinates so as to protect Plaintiff's constitutional rights from violation. He alleges that Superintendent Gilmore was responsible for "training and supervising correctional officers at SCI-Greene" and that he "failed to provide adequate training and supervision to ensure that correctional officers, including the other defendants, understood and complied with DOC's use of force policy, access to medical care for emergency [policy], and use of restraints policy." (ECF No. 3 at ¶¶ 106-07.) He further alleges that as a result of

---

[1] The Third Circuit recently held that the standard announced in Sample for imposing supervisory liability based on an Eighth Amendment violation is consistent with Iqbal. Barkes v. First Correctional Medical, Inc., 766 F.3d 307, 320 (3d Cir. 2014).

Superintendent Gilmore's failure to provide this training and supervision, defendants John Doe #1 and John Doe #2 injured Plaintiff on September 20, 2014; defendant Jane Doe failed to intervene when John Doe #1 and John Doe #2 "hauled plaintiff out of the examination room without being treated for his broken arm"; and defendants John Doe #1, John Doe #2, and Jane Doe denied him emergency medical care and covered up his injuries. Id. at ¶¶ 108-10. Plaintiff also alleges that Superintendent Gilmore knew of other occasions when DOC policy on use of force and restraints were violated and denial of medical care was practiced by correctional officers and staff under his command, including defendants John Doe #1-#3 and Jane Doe. Id. at ¶ 111.

Taking as true Plaintiff's allegations concerning Superintendent Gilmore's failure to train and supervise, Plaintiff has stated a plausible claim for relief that Superintendent Gilmore's practice of failing to train and supervise his employees on the DOC's policies regarding use of force, use of restraints, and access to medical care created an unreasonable risk that a constitutional injury would occur, of which he was aware and indifferent to, and which resulted in an injury to Plaintiff. Specifically, Plaintiff has alleged that Superintendent Gilmore was responsible in his position of authority to ensure his correctional officers were trained on use of force, use of restraints, and access to medical care policies and the failure to perform this function created an unreasonable risk of injury. Whether the facts at issue here constitute a constitutional violation is inappropriate for the Court to determine at this juncture.

Plaintiff also alleges that Superintendent Gilmore "tolerated, encouraged, and acquiesced in a practice of excessive use of force by correctional officers at Greene through his failure to appropriately discipline those he knew had violated DOC policy on use of force, application of restraints, and access to medical care." Id. at ¶ 112. He further alleges that Superintendent

Gilmore acquiesced in the security office's practice of ignoring prisoner complaints of abuse. Id. at ¶ 113. Taking these allegations as true, Plaintiff has stated a plausible claim that Superintendent Gilmore's actions of ignoring inmate abuse complaints and failing to discipline correctional officers for violating the aforementioned DOC policies created an unreasonable risk that the officers, including the other defendants, would violate these policies knowing that they would not be disciplined for such conduct and that these actions indirectly caused his injuries.

Accordingly, Plaintiff has sufficiently pled the requisite level of personal involvement as to Superintendent Gilmore and the Defendant's motion should therefore be denied.

### III.    CONCLUSION

For the reasons set forth above, it is respectfully recommended that Defendant Gilmore's Motion to Dismiss (ECF No. 11) be denied.

In accordance with the applicable provisions of the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B)&(C), and Rule 72.D.2 of the Local Rules of Court, the parties shall have fourteen (14) days from the date of the service of this report and recommendation to file written objections thereto. Any party opposing such objections shall have fourteen (14) days from the date on which the objections are served to file its response. A party's failure to file timely objections will constitute a waiver of that party's appellate rights.

Dated: June 1, 2015.

/s/ Lisa Pupo Lenihan
Lisa Pupo Lenihan
United States Magistrate Judge

cc: Jamar Wilson
    JM8436
    175 Progress Drive

Waynesburg, PA  15370

Counsel of record.